IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHERYL D. WEBER
a/k/a CHERYL D. LONG                                                    PLAINTIFF

vs.                              CIVIL NO. 05-5208

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Cheryl Weber, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Act.

**Procedural Background:**

The applications for DIB and SSI now before this court were filed on May 9, 2001, alleging an inability to work since November 24, 2000, due to stomach problems, carpal tunnel syndrome, and temporomandibular joint syndrome ("TMJ"). (Tr. 139, 146, 336-339). An administrative hearing was held on September 24, 2002, resulting in an unfavorable decision. (Tr. 12-24).

On January 3, 2003, plaintiff filed a second disability application alleging disability due to mental retardation. (Tr. 669). An administrative hearing was held on January 29, 2004, but no decision was entered. Instead, this application was merged with her two previously filed applications. (Tr. 669).

On February 10, 2004, this court remanded plaintiff's original applications to the ALJ for further proceedings. (Tr. 383-384). A supplemental administrative hearing was then held on

December 8, 2004. (Tr. 665-685). Plaintiff was present and represented by council, and both applications were considered.

At the time of the supplemental administrative hearing, plaintiff was twenty-six years old and possessed a high school education. (Tr. 358). Records indicate that she had past relevant work experience ("PRW") as a production worker. (Tr. 358).

In a written decision dated June 20, 2005, the ALJ determined that plaintiff's impairments were severe but did not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4. (Tr. 361-362). The ALJ then concluded that plaintiff maintained the residual functional capacity ("RFC") to perform work at all exertional levels. He also found that plaintiff had a more than satisfactory ability to follow work rules and understand, remember and carry out simple instructions; a limited but satisfactory ability to deal with the public, use judgment, maintain personal appearance, behave in an emotionally stable manner and relate predictably in social situations; a seriously limited but not precluded ability to relate to co-workers, interact with supervisors, deal with work stresses and function independently; and, no useful ability to understand, remember or carry out detailed or complex instructions or demonstrate reliability. (Tr. 361-362). Then, based upon the vocational expert's ("VE") responses to written interrogatories, the ALJ determined that plaintiff was capable of performing work that exists in significant numbers in the national economy, namely the positions of motel maid, poultry eviscerator, and laundry worker. (Tr. 361).

On October 18, 2005, the Appeals Council declined to review this decision. (Tr. 350-352). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report

and recommendation. Although both parties were afforded the opportunity to file appeal briefs, plaintiff has chosen not to do so. (Doc. # 3).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must

show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical

question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id.* Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

The pertinent medical evidence reveals as follows. On May 5, 2001, plaintiff underwent a psychological evaluation. (Tr. 241-244). The testing consisted of the Wechsler Abbreviated Scale of Intelligence, the Wide Range Achievement Test-3 and the Ohio Literacy Test. (Tr. 241). The psychological examiner reported that plaintiff appeared to be functioning at the mildly retarded level. The examiner opined that with periodic supervision in major life activities and extensive vocational

and personal guidance and assistance, plaintiff would be able to work in a sheltered-workshop or supported employment. (Tr. 244).

On July 25, 2001, plaintiff underwent an intellectual assessment and evaluation of adaptive functioning performed by Dr. Swapnila Suvadarsani. (Tr. 245-247). Dr. Suvadarsani noted plaintiff was brought to the evaluation by her mother. Plaintiff scored a full scale score of sixty-six on the Wechsler Adult Intelligence Scale-III, which Dr. Suvadarsani noted fell within the mental retardation range of intelligence. Dr. Suvadarsani stated that the scatter between plaintiff's verbal and performance IQ's suggested the presence of a learning disability. However, the doctor indicated that plaintiff's intellectual assessment was not consistent with her adaptive functioning evaluation, as plaintiff was functioning at a higher level in her activities of daily living. (Tr. 247).

On March 5, 2002, plaintiff underwent a psychological evaluation performed by Dr. Bettye Back-Morse. (Tr. 327-328). After reviewing plaintiff's test responses, Dr. Back-Morse reported that plaintiff's overall intellectual level fell into the mild range of mental retardation with a full scale IQ of sixty-seven. Dr. Back-Morse opined that plaintiff's test patterns indicated a significant weakness in the area of working memory (new learning) and a relative weakness in verbal skills. However, plaintiff had a relative strength in the area of perceptual organizational skills. Dr. Back-Morse's diagnostic impression indicated mild mental retardation, mild to moderate depression, gastrointestinal disorder, by report, and carpal tunnel syndrome, by report. (Tr. 328). She opined that plaintiff met the listing for disability under sections 12.00, 12.05 and 12.04. Dr. Back-Morse stated, "It is my recommendation that [plaintiff] apply for social security disability benefits." (Tr. 328).

On March 15, 2002, Dr. Back-Morse completed a mental RFC assessment stating that plaintiff had marked limitations in the following areas: ability to remember locations and work-like procedure; ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, ability to maintain regular attendance and be punctual within customary tolerances; ability to make simple work-related decisions; ability to respond appropriately to change in the work setting; ability to travel in unfamiliar places and use public transportation; and, ability to set realistic goals or make plans independently of others. (Tr. 324-326). Dr. Back-Morse indicated plaintiff had moderate limitations in the following areas: ability to understand and remember very short and simple instructions; ability to carry out very short and simple instructions; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to ask simple questions or request assistance; ability to accept instructions and respond appropriately to criticism; and ability to be aware of normal hazards and take appropriate precautions. (Tr. 324-326).

On October 27, 2003, Dr. Scott McCarty performed a psychological evaluation on plaintiff. (Tr. 568-571). After administering the Wechsler Adult Intelligence Scale III, he determined that plaintiff had a full scale I. Q. of sixty-five. (Tr. 569). Testing also revealed that plaintiff functioned on the third grade level in reading and spelling and the second grade level in arithmetic. (Tr. 570). Because the MMPI-2 required at least an eighth grade reading ability, the items were read to plaintiff by the examiner. The test results were deemed invalid because it appeared as though plaintiff was not being wholly truthful in reporting her symptoms. The clinical scales indicated a tendency to

exaggerate her physical problems beyond what was physically confirmable, and to often misinterpret normal pains or bodily functions. However, Dr. McCarty indicated that this was likely due to her limited cognitive abilities rather than willful, intentional exaggeration. (Tr. 570). After noting that plaintiff was functioning in the "extremely low range of intelligence," Dr. McCarty diagnosed plaintiff with posttraumatic stress disorder ("PTSD") and mild mental retardation with no chance that her condition would improve over the next twelve months. (Tr. 571). He then noted that her global assessment of functioning score ("GAF") was fifty-five.[1] (Tr. 571).

Dr. McCarty also completed an assessment of plaintiff's ability to perform work-related mental activities. (Tr. 572-573). He determined that she had a poor ability to understand, remember, and carry out complex job instructions; understand, remember, and carry out detailed but not complex job instructions; and, demonstrate reliability. (Tr. 573). Further, Dr. McCarty found that plaintiff had only a fair ability to relate to co-workers, interact with supervisors, deal with work stresses, and function independently. (Tr. 572-573). He also indicated that plaintiff would need a great deal of one on one attention that "regular work setting[s] would not be able to accommodate." (Tr. 572).

On December 20, 2004, Dr. Back-Morse completed a second mental RFC assessment of plaintiff.[2] (Tr. 627-628). She indicated that plaintiff had only a fair ability to follow work rules;

---

[1] A GAF of fifty-five is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

[2] Pursuant to our remand order, the ALJ requested that Dr. Back-Morse complete a second RFC assessment. He did not, however, ask Dr. Back-Morse to "specifically address what objective evidence she used in determining that plaintiff met the listing for disability under sections 12.00, 12.04 and 12.05," as he was directed to do.

relate to co-workers; deal with the public; use judgment; interact with supervisors; function independently; maintain attention and concentration; and, understand, remember, and, carry out detailed but not complex job instructions. Further Dr. Back-Morse found plaintiff to have a poor ability to deal with work stresses; understand, remember, and carry out complex job instructions; and, demonstrate reliability. (Tr. 627-628).

In spite of these reports prepared by treating and/or examining physicians, the ALJ concluded that plaintiff had a more than satisfactory ability to follow work rules, and understand, remember and carry out simple instructions; a limited but satisfactory ability to deal with the public, use judgment, maintain personal appearance, behave in an emotionally stable manner and relate predictably in social situations; a seriously limited but not precluded ability to relate to coworkers, interact with supervisors, deal with work stresses and function independently; and, no useful ability to understand, remember or carry out detailed or complex instructions or demonstrate reliability. (Tr. 361-362). In so doing, the ALJ utilized the opinion of a non-examining, consultative physician, dismissing the opinions of plaintiff's treating doctors. (Tr. 305-321). When dismissing or discounting the opinion of a treating physician, the ALJ is required to "give good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878 -879 (8th Cir. 2002); *Prosch v. Apfel,* 201 F.3d at 1010, 1013 (8th Cir. 2000). Because the ALJ failed to do so in this case, we believe that remand is necessary to allow him to reconsider his RFC assessment.

We also note that the ALJ failed to seek clarification regarding Dr. Back-Morse's notation that plaintiff met the listing for disability under sections 12.00, 12.04 and 12.05, as was previously ordered by this court. (Tr. 328). Therefore, on remand, he is directed to do so. The ALJ should

9

direct an interrogatory to Dr. Back-Morse asking her to explain why she believes plaintiff meets the listings. No additional mental RFC assessments are necessary.

Also of significance is the ALJ's failure to discuss the fact that plaintiff was diagnosed with Chiari I Malformation. Instead, he dismissed plaintiff's subjective complaints of headaches, stating that they were responsive to medication. We note that the ALJ is not free to ignore medical evidence, rather must consider the whole record. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).

On November 10, 2004, Dr. Ryan Kaplan performed a neurological examination on plaintiff. (Tr. 622-625). He stated that the severity of her daily headaches (which she rated as a ten on a scale of one to ten) would prevent her from holding down a normal job. (Tr. 622).

On December 13, 2004, Dr. Kaplan indicated that plaintiff's headaches had shown some improvement due to the use of Topomax. (Tr. 632). However, he noted that the results of the MRI conducted on November 16, 2004, showed a mild Arnold Chiari Type I malformation.[3] (Tr. 632, 633).

By failing to mention this diagnosis, the ALJ has left the undersigned with a critical question as to whether the allegations were properly considered, or, indeed, if they were considered at all. Absent a proper analysis of these subjective allegations, it is impossible to find that the hypothetical

---

[3]The Chiari I malformation is characterized by a small or misshapen posterior fossa (the compartment in the back of the skull), a reduction in cerebrospinal fluid pathways, and a protrusion of the cerebellar tonsils through the bottom of the skull (foramen magnum) into the spinal canal. *See* American Syringomyelia Alliance Project, *What is the Chiari Malformation?*, *at* www.asap.org. Common symptoms include neck pain, headaches accentuated by coughing, sneezing, or straining; dizziness; vertigo; disequilibrium; muscle weakness; balance problems; blurred or double vision; hypersensitivity to bright lights; nystagmus; tinnitus, hearing loss; vocal cord paralysis; difficulty swallowing, frequent gagging and choking; and, sleep apnea. *Id*.

question posed to the VE was proper. It is well settled that a hypothetical question posed to a VE must capture the concrete consequences of a plaintiff's deficiencies. *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996). Of course, the testimony of a vocational expert in response to a hypothetical question which does not precisely state to the expert the plaintiff's condition cannot be accepted as substantial evidence. *Douglas v. Bowen*, 836 F.2d 392 (8th Cir. 1987).

Accordingly, on remand, the ALJ is directed to consider plaintiff's diagnosis of Arnold Chiari Type I malformation. He should also develop the record further concerning the symptoms of this disorder that are experienced by plaintiff and include those symptoms in a hypothetical question posed to the VE.

**Conclusion:**

Based on the foregoing, we recommend reversing the ALJ's decision and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of September 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE